**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 07-238 |
| | : | |
| RODERICK WATSON | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                            January 23    , 2009


On October 30, 2007, Defendant Roderick Watson ("Defendant") was charged by

Superseding Indictment with one count of conspiracy to interfere with interstate commerce by

robbery, in violation of 18 U.S.C. § 1951(a) (count one); four counts of interference with

interstate commerce by robbery, and aiding and abetting, in violation of 18 U.S.C. §§ 2, 1951(a)

(counts two, three, four, and six); two counts of using and carrying a firearm during a crime of

violence, and aiding and abetting, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A) (counts five and

seven); and one count of interstate transportation of stolen goods, and aiding and abetting, in

violation of 18 U.S.C. §§ 2, 2314 (count eight).  Now before the Court is Defendant's Motion to

Suppress three men's watches recovered from his home on August 30, 2007.  For the reasons

discussed below, the Motion will be denied.


**I.  BACKGROUND**

On August 30, 2007, Defendant was in a residence at 120 North Felton Street in

Philadelphia, PA when several agents of the Federal Bureau of Investigation and officers of the

Philadelphia Police Department arrived at his location.[1]  After the agents and officers knocked and announced their presence, Defendant exited the residence and was handcuffed and arrested pursuant to a federal arrest warrant.[2]  At Defendant's request, he was brought back into the residence, where he was searched.  The agents and officers removed all jewelry from his person and gave the jewelry to Tiffany McGeth ("McGeth"), a resident of the home.  Defendant was transported to the FBI Office in Philadelphia for processing.

After the arrest, several FBI agents remained at Defendant's residence and interviewed McGeth.  The agents received verbal authority from her to search the residence for keys to Defendant's vehicle.  McGeth informed Agent Stephen Heaney ("Heaney") that she rented the residence and that Defendant stayed there occasionally.  While Heaney was presenting a "consent to search" form to McGeth for her signature, Agent Kevin McShane ("McShane") asked McGeth for permission to use the restroom.[3]  After receiving permission to do so, McShane entered the bathroom, lifted the toilet seat, and observed a tampon box containing three men's watches floating in the toilet, all of which had their store sales tags attached.  McShane then told Heaney of his discovery.  When Heaney arrived upstairs, he examined the three watches.  Because Heaney was familiar with Defendant's prior federal guilty plea for jewelry store robberies, he recognized the incriminating nature of the watches.

---

[1]      The facts presented are based on the testimony of witnesses at the suppression hearing and the Court's credibility determinations.

[2]      Defendant does not challenge the validity of the arrest warrant.

[3]      McGeth later signed the "consent to search" form, and the agents searched the residence.  During their search, the agents discovered additional evidence that is not the subject of the instant Motion.

## II. DISCUSSION

Defendant contends that the three watches were seized in violation of his Fourth Amendment rights. The Government responds that the watches were discovered in "plain view" and that their seizure was proper. As the Supreme Court has explained, "The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." Illinois v. Andreas, 463 U.S. 765, 771 (1983). "The rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). In order to establish that an item was seized pursuant to the "plain view" doctrine, the Government must show by a preponderance of the evidence that: (1) the officers were lawfully in the position from which the evidence could be seen; (2) the incriminating character of the evidence was immediately apparent; and (3) the officers had a lawful right of access to the evidence. See, e.g., United States v. Menon, 24 F.3d 550, 559 (3d Cir. 1994) (citing Horton v. California, 496 U.S. 128, 136 (1990)).

### A. Lawful Presence

As the Third Circuit has explained, "a search warrant, supported by probable cause, is normally necessary before law enforcement may lawfully search a person's property. Searches of a home without a warrant are presumptively unreasonable under the Fourth Amendment." United States v. Burton, 288 F.3d 91, 102 (3d Cir. 2002) (citing Payton v. New York, 445 U.S.

573, 586 (1980)).  Defendant argues that once the agents executed the arrest warrant, they no

longer had any legal authority to remain inside the house.  While he admits the initial entry into

the residence was permissible because it was based on his consent, he contends that once the

arrest was complete, the additional intrusion of the search violated the Fourth Amendment.[4]

Therefore, he asserts, any evidence obtained after his arrest should be suppressed as fruit of the

poisonous tree.  He also argues that McGeth was not authorized to give consent to the search.[5]

The Government contends that the post-arrest search was proper based on the consent of

McGeth.  Despite the general warrant requirement for searches of a private residence, "[i]t is

equally well settled that one of the specifically established exceptions to the requirements of both

a warrant and probable cause is a search that is conducted pursuant to consent."  Schneckloth v.

Bustamonte, 412 U.S. 218, 219 (1973).  Consent may be obtained either from the person whose

property is searched or "from a third party who possesses common authority over the premises."

---

[4]     Defendant cites no authority for the proposition that once the arrest was complete,
the agents were required to leave the premises immediately and were forbidden from remaining
on the premises.  Indeed, courts have recognized that arresting officers may remain on the
premises briefly when seeking permission to search.  See United States v. Diaz, 577 F.2d 821,
824 (2d Cir. 1978) (explaining that after officers legally entered an apartment to arrest an
individual, the officers were not required to leave the premises immediately after the arrest but
could monitor the premises until a search warrant or consent could be obtained).  In the instant
case, Heaney testified that the interview with McGeth began immediately after Defendant was
removed from the premises and that he sought and obtained consent to search during the course
of that interview.

[5]     Defendant does not argue that the request to use the restroom itself was a "search"
or that the request violated the Fourth Amendment.  Rather, his argument is that but for the
officers' failure to exit the premises and to obtain proper consent for their search of the residence,
McShane would have had no occasion to ask for permission to use the restroom and subsequently
discover the stolen watches.  Defendant's theory is that the officers' unlawful presence in the
home renders inapplicable the "plain view" rule that otherwise would have permitted McShane
to seize the watches from the toilet.  See Horton, 496 U.S. at 136.

4

Illinois v. Rodriguez, 497 U.S. 177, 181 (1990) (citing United States v. Matlock, 415 U.S. 164, 171 (1974)).  The consent exception "extends even to entries and searches with the permission of a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant." Georgia v. Randolph, 547 U.S. 103, 109 (2006) (citing Rodriguez, 497 U.S. at 186).  The Supreme Court has explained that the third party's "common authority" to consent does not depend on traditional property rights:

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

Id. at 110 (citations omitted in original) (quoting Matlock, 415 U.S. at 171 n.7).  Rather, "great significance is given to widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules." Id. at 111.

In the instant case, McGeth specifically informed Heaney that she was the renter of the property and that Defendant resided there only temporarily.  She also gave consent without hesitation and without placing limits on the scope of the search.  Thus, Heaney's belief that she had authority was reasonable based on her statements and behavior.  See Rodriguez, 497 U.S. at 188 ("As with other factual determinations bearing upon search and seizure, determination of consent to enter 'must be judged against an objective standard: would the facts available to the officer at the moment . . . warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?") (quoting Terry v. Ohio, 392 U.S. 1, 21-22 (1968))).  Accordingly, even if the Court were to credit Defendant's unsupported argument that McGeth

5

lacked actual authority to give consent, Heaney reasonably believed that she possessed such authority, and Defendant's argument that the agents improperly remained on the premises fails as a matter of law.

### B.  Incriminating Nature of the Stolen Watches

The Government contends that the watches—which had store tags still attached—were clearly incriminating, given that the officers were aware of the pending Indictment against Defendant for jewelry store robberies.  Further, Heaney testified that at the time of Defendant's arrest, he was aware that Defendant had sustained a prior federal conviction for jewelry store robberies.  Because these watches were the same type of merchandise Defendant had a history of stealing, and because watches are not normally stored floating in a toilet, Heaney and McShane knew collectively that the evidence was incriminating, thus satisfying the second prong of the "plain view" test.  See Menon, 24 F.3d at 562 ("[W]e agree with the courts of appeals that have decided that the immediate apparency of criminality should be measured, at a minimum, by the collective knowledge of the officers on the scene."); see also United States v. Barnard, 2008 U.S. Dist. LEXIS 8665, at *14-15 (D. Del. Feb. 6, 2008) (finding that the criminality of evidence, including envelopes addressed to a suspect's alias, was "immediately apparent" when officers searching for drugs presented the evidence to an officer who, based on his knowledge of the suspect, "realized its incriminating nature"); United States v. Yancy, 1995 U.S. Dist. LEXIS 9825, at *12-13 (E.D. Pa. July 14, 1995) ("The incriminating nature of the $1400 was immediately apparent to Henry on the basis of the First Valley Bank envelope which contained it. Henry testified at the suppression hearing that on the basis of his previous investigation of Yancy, he was aware that First Valley Bank was one which Yancy was suspected of

defrauding.").

### C.  Lawful Right of Access

The Government contends that McShane had permission to use the restroom and viewed the watches after lifting the toilet seat, and thus he had a lawful right of access to the evidence floating in the toilet bowl.  See, e.g., United States v. Morgan, 2000 U.S. Dist. LEXIS 15905, at *24-25 (E.D. Pa. Oct. 20, 2000) (concluding that the officers had a lawful right of access to the evidence because "the confiscated material was lying out in the open when they entered the apartment, and they neither moved nor handled any objects in the apartment in order to locate it"), aff'd, 33 F. App'x 603 (3d Cir. 2002).  The Court agrees.  Both Heaney and McShane testified that McGeth gave permission for McShane to use the restroom.  Pursuant to McGeth's permission, McShane lifted the toilet seat and discovered incriminating evidence floating in the bowl.  As the Supreme Court has explained, "This is a classic instance of incriminating evidence found in plain view when a police officer, for unrelated but entirely legitimate reasons, obtains lawful access to an individual's area of privacy.  The Fourth Amendment does not prohibit seizure of evidence of criminal conduct found in these circumstances."  Washington v. Chrisman, 455 U.S. 1, 9 (1982)

### III.  CONCLUSION

The Government has met its burden to show all three elements required for a "plain view" seizure.  Accordingly, the Court finds no Fourth Amendment violation, and Defendant's

Motion to Suppress the watches will be denied.[6]  An appropriate Order follows.

---

[6]        After the December 17, 2008 suppression hearing, Defendant filed a second Motion to Suppress in which he argues that the contents of a black duffel bag were seized in violation of the Fourth Amendment.  The Motion to Suppress the duffel bag and its contents, as well as Defendant's pending Motion to Sever, will be addressed in a subsequent Memorandum and Order.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| v. | : | **NO. 07-238** |
| | : | |
| **RODERICK WATSON** | : | |

## ORDER

    **AND NOW**, this    23rd    day of January, 2009, upon consideration of Defendant's Motion to Suppress Physical Evidence (docket no. 50) and the Government's Response thereto (docket no. 58), and after an evidentiary hearing held on December 17, 2008, it is **ORDERED** that the Motion is **DENIED**.

                        **BY THE COURT:**


                          **S/ BRUCE W. KAUFFMAN**
                        **BRUCE W. KAUFFMAN,  J.**