IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

RODERICK WATSON,

          Defendant.

CRIMINAL ACTION
NO. 07-238

## OPINION

**Slomsky, J.**                                                                                 **January 25, 2021**

## I.      INTRODUCTION

Defendant Roderick Watson ("Defendant"), who is serving a 240-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  In his Motion (Doc. No. 129), Defendant requests either a reduction of his sentence to time served or that he be permitted to serve the remainder of his sentence in home confinement.  He argues that the Court should grant his Motion because the COVID-19 pandemic, the conditions at his prison, and his underlying health conditions place him at an increased risk of harm from the COVID-19 virus.  Defendant also contends that his release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because he has served approximately 159 months of his sentence and has many accomplishments while incarcerated.  The Government opposes Defendant's Motion, citing the severity of Defendant's underlying offenses, Defendant's conduct while incarcerated, and the numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities.  For reasons that follow, Defendant's Motion will be denied.

## II.      BACKGROUND

### A.      Defendant's Prior Convictions and Criminal History

Defendant is presently incarcerated for his participation in four Hobbs Act robberies in violation of 18 U.S.C. § 1951(a) and for his actions related to these robberies.  (See Doc. No. 132 at 1-4.)  As part of his guilty plea for these offenses, Defendant stipulated that he was a leader, manager, and supervisor of these four robberies, wherein he committed one of the robberies and directed others to commit the other three robberies.  (See id.)  All four of these robberies will be discussed chronologically.

On June 4, 2002, Defendant organized a robbery of Whitehall Company Jewelers in Moorestown, New Jersey.  (See id. at 1.)  Co-defendant Darryl Bellamy and an unidentified man smashed the store's jewelry display cases, stole $33,096 in jewelry, and fled the scene in a stolen getaway car driven by later-cooperating co-defendant Jerome Jeter.  (See id. at 1-2.)  Defendant received the jewelry, sold it, and paid the three men for their criminal acts.  (See id. at 2.)

On August 15, 2003, Defendant, Jeter, and a third man robbed the NMG Gold Exchange in Philadelphia.  (See id.)  The men entered the store, stole approximately $5,000 in jewelry, and fled the scene in a car belonging to Defendant's wife.  (See id.)  Because Defendant believed that a witness saw the car's license plate, he instructed his wife to report the car as stolen, and she did so later that day.  (See id.)

On December 23, 2004, Defendant directed two robberies committed by Jeter and two other men.  (See id.)  These two robberies occurred in Philadelphia at a Sally Beauty Supply and a nearby Sunoco store.  (See id.)  These two stores, Jeter noted, were selected and cased by Defendant.  (See id.)  In both robberies, Jeter and the men wore ski masks, accosted store clerks at gunpoint, and stole cash from the stores.  (See id.)  After the robbers fled the Sunoco store, a

witness advised the police of the robbery, and a high-speed chase commenced.  (See id. at 3.)
The chase eventually ended, Jeter and the two other men were arrested, and police found a black
Colt .38 caliber revolver inside the car.  (See id.)  After his arrest, Jeter advised the police of
Defendant's involvement in the crime, noting that Defendant was waiting for him and the other
men in a nearby van and drove in front of the police during the chase to thwart the officers'
pursuit. (See id.)

Finally, on August 30, 2007, Defendant was arrested in Philadelphia.  (See id.)  When he
was arrested, police found three Rolex watches, valued at $24,325, concealed inside a toilet
bowl.  (See id. at 3-4.)  Because the watches still had tags on them, the police confirmed that
these watches were stolen in Virginia two days before Defendant's arrest, and they were
transported to Philadelphia in interstate commerce.  (See ids.)

On July 19, 2010, following his guilty pleas, Defendant was sentenced to 240 months'
imprisonment followed by five years' supervised release for: (1) conspiracy to commit Hobbs
Act robberies, in violation of 18 U.S.C. § 1951(a); (2) four Hobbs Act robberies, in violation of
18 U.S.C. § 1951(a); (3) aiding and abetting the possession of a firearm during one of those
robberies, in violation of 18 U.S.C. § 924(c); and (4) interstate transportation of stolen goods, in
violation of 18 U.S.C. § 2314.[1]  (See id. at 4.)  Defendant has served approximately 180 months
of his sentence,[2] which is three-fourths of his total term of imprisonment, and his anticipated
release date is December 13, 2024.  (See id. at 5.)  He is serving his sentence at United States
Penitentiary McCreary ("USP McCreary") in Pine Knot, Kentucky.  (See id.)

---

[1]  In Defendant's plea agreement, the Government dismissed one count of aiding and abetting
the possession of a firearm, in violation of 18 U.S.C. § 924(c).  (See Doc. No. 132 at 4.)

[2]  Defendant has served approximately 159 months of his 240-month sentence and has received
approximately 21 months credit for good conduct.  (See Doc. No. 132 at 5.)

Defendant has an extensive criminal history, including five juvenile adjudications and seventeen adult convictions.  (See id. at 4-5.)  Aside from Defendant's present incarceration for the offenses described above, he also previously served a sentence of 60 months in prison for Hobbs Act robberies, wherein he stole $477,000 in merchandise.  (See id. at 5.)  After serving that sentence, while he was on supervised release, Defendant committed the first two robberies for which he is presently incarcerated. (See id.) Moreover, while currently incarcerated, Defendant has committed fourteen disciplinary infractions for abusing the telephone, destroying property less than $100, using another inmate's PIN, giving/receiving money without authorization, stealing food, making a false statement, and possessing an unauthorized item, a homemade heating element, unauthorized DVDs, and narcotics.  (See id. at 6.)

### B.    Defendant's Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) and the Government's Response

On July 16, 2020, Defendant sent a request for compassionate release to the Warden at USP McCreary.  (See Doc. Nos. 129 at 5; 132 at 6.)  On November 17, 2020, Defendant filed the instant Emergency Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting that his sentence be modified to time served or, alternatively, that he be released to home confinement for the remainder of his sentence.  (See Doc. No. 129 at 3.)  Included with his Motion are copies of his Bureau of Prisons ("BOP") medical records and letters from his wife and daughter.  (See Doc. Nos. 129-1, 129-2.)

In his Motion, Defendant contends that his obesity, hypertension, and asthma "place him at high risk of severe illness or death if he contracts COVID-19."  (Doc. No. 129 at 3.)     He argues that these medical conditions and the ongoing pandemic, combined with the conditions at USP McCreary, are extraordinary and compelling reasons that warrant his release.  (See id.) Moreover, Defendant claims that a modification of his sentence is consistent with the § 3553(a)

4

sentencing factors because he accepts responsibility for his actions, has served approximately three-fourths of his sentence, and has worked to rehabilitate himself while in prison by attending educational and vocational training, obtaining his GED, and participating in a drug program, group therapy, and an anger management program.  (See id. at 5, 13-14.)

On December 31, 2020, the Government filed a Response to Defendant's Motion (Doc. No. 132).  In its Response, the Government concedes that Defendant's obesity is an extraordinary and compelling reason for his compassionate release.  (See id. at 15-16.)  Despite this concession, the Government opposes Defendant's compassionate release.  (See id. at 16.)  It argues that Defendant can manage his obesity while incarcerated and that the § 3553(a) sentencing factors "show[] that release at this point is inappropriate . . . ."  (Id. at 17.)  In discussing the § 3553(a) sentencing factors, the Government submits that Defendant is a danger to the community because of his criminal history and continued violations while incarcerated, and that he should serve his full sentence.  (See id. at 5, 17.)  Moreover, the Government supplements its argument with a discussion on the BOP's response to the COVID-19 pandemic. (See id. at 7-12.)  It also submits that the "BOP's aggressive efforts have extended to USP McCreary[,]" despite one COVID-related inmate death at the facility.  (Id. at 11.)

## III.   DISCUSSION

### A.    The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ."  18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A).  As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a

defendant's motion after the defendant has exhausted his administrative remedies.[3]   See §

3582(c)(1)(A)(i).  The statute provides, in part, that a court:

> [M]ay reduce the term of imprisonment (and may impose a term of
> probation or supervised release with or without conditions that
> does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in [§ 3553(a)]
> to the extent that they are applicable, if it finds that—
>
> > (i)  extraordinary and compelling reasons warrant such a
> >     reduction; . . .
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and compelling

reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to

constitute an extraordinary and compelling reason.   28 U.S.C. § 994(t).   Instead, Congress

delegated the authority to define "extraordinary and compelling reasons" to the United States

Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines explains that a sentence

reduction under § 3582(c)(1)(A) may be ordered where a court determines:

---

[3]   A defendant may file a motion for compassionate release directly with a district court after he
"has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a
motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by
the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A).
In other words, before a defendant can make such a request to the court, he "must at least ask
the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to
respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does
respond adversely within the thirty days, to then exhaust any available administrative appeals
during that period.  See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion.  On July 16,
2020, he sent a request for compassionate release to the Warden at USP McCreary.  (See Doc.
Nos. 129 at 5; 132 at 6.)  The parties do not state when the Warden received Defendant's
request, but Defendant notes that the Warden "denied this request." (Doc. No. 129 at 5.)  On
November 17, 2020, over thirty days after he sent his request, Defendant filed his Emergency
Motion to Reduce Sentence.  (See id. at 129 at 5.)  Because the Warden at USP McCreary
denied Defendant's request and over 30 days passed between Defendant's request and his
filing of the instant Motion, he has met the exhaustion requirement.

[A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—

    (1)  (A)  Extraordinary and compelling reasons warrant the reduction; . . .

    (2)  the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3)  the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13, App. Note 1(A)-(C). This Note states:

Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)  Medical Condition of the Defendant

    (i)    The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amytrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

    (ii)    The defendant is—

        (I)    suffering from a serious physical or mental condition,

        (II)    suffering from a serious functional or cognitive impairment, or

        (III)    experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)  Age of the Defendant. The defendant

  (i)    is at least 65 years old;

  (ii)   is experiencing a serious deterioration in physical or mental health because of the aging process; and

  (iii)  has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  Family circumstances.

  (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C).  Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[4]

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.14 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether

---

[4]  Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement.  See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using section 1B1.13 as "helpful guidance.").

there are extraordinary and compelling reasons warranting a sentence reduction under §
3582(c)(1)(A).  See Rodriguez, 451 F. Supp. 3d at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the
country have [only] granted compassionate release where the defendant suffers from a serious
condition that increases the likelihood of severe consequences from COVID-19."  United States
v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting
United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15,
2020)).  In the Third Circuit, this means that "the mere existence of COVID-19 in society and the
possibility that it may spread to a particular prison alone cannot independently justify
compassionate release . . . ."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In
addition, "[m]ost, though not all, of the cases where compassionate release has been granted also
involved some showing that COVID-19 is actually present, usually to a significant degree, in the
facility where the prisoner is incarcerated."  Somerville, 463 F. Supp. 3d at 596.  Thus, "a
prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical
condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death
if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in
the facility where the prisoner is held."  Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must
then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is
warranted and, if so, the extent of such reduction.  See id. at 588 ("[T]he Court must weigh [the]
extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. §
3553(a).").  Section 3553(a) establishes factors for a court to consider in initially imposing a

sentence.  Not every factor is applicable, however, when considering a motion for compassionate release.  In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
>> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6).  Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

**B.      Defendant's Emergency Motion to Reduce Sentence Will Be Denied**

Defendant's Motion will be denied.  Despite the Government's concession that Defendant's obesity is an extraordinary and compelling reason for his release, the relevant

§ 3553(a) factors weigh against a reduction or modification of his sentence.[5]   Each of these matters is discussed seriatim.

### 1.   Defendant's Obesity May Present An Extraordinary and Compelling Reasons for His Release

Defendant contends that he has shown an extraordinary and compelling reason for his release because his obesity, hypertension, and asthma "put him in grave danger should he contract COVID-19 in BOP custody[.]"  (Doc. No. 129 at 6.)  Of these three medical conditions, the Government submits that Defendant's hypertension and asthma do not establish the required particularized vulnerability to COVID-19 and its effects to constitute an extraordinary and compelling reason for his release.[6]  (See Doc. No. 132 at 7, 19-20.)  The Government does, however, concede that Defendant's obesity meets the U.S.S.G. § 1B1.13 Application Note 1(A) definition of extraordinary and compelling reasons for release.  (See id. at 15-16.)  This condition, the Government notes, is a risk factor identified by the Centers for Disease Control and Prevention ("CDC") "as increasing the risk of an adverse outcome from COVID-19[.]"  (Id. at 15.)

---

[5]   Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence is also consistent with applicable policy statements of the Sentencing Commission.

[6]   There is an actual, non-speculative risk of contracting COVID-19 at USP McCreary.  In the Government's Response to Defendant's Motion filed on December 31, 2020, the Government stated that there were 60 present cases of inmates with COVID-19 at USP McCreary.  (See Doc. No. 132 at 11.)  As of the date of the filing of this Opinion, 19 inmates and 21 staff members have tested positive for COVID-19 at USP McCreary.  See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (January 25, 2021), https://www.bop.gov/coronavirus/.  These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ."  Id. (emphasis omitted).  Despite the decrease in COVID-19 cases from the filing of the Government's Response to the filing of this Opinion, COVID-19 is still present, to a significant degree, at USP McCreary.  However, the Court notes that the BOP has implemented precautions to quarantine infected and symptomatic inmates to contain the virus's spread.  (See Doc. No. 132 at 7-12.)

For purposes of this Motion, the Court will assume that Defendant's obesity presents an extraordinary and compelling reason for his compassionate release in light of the COVID-19 pandemic. Because the Government concedes that Defendant's obesity presents an extraordinary and compelling reason for his release, the Court need not address whether his other medical conditions also meet this threshold. However, the Court notes that other courts have rejected claims of extraordinary and compelling reasons for release based on hypertension and asthma. See, e.g., United States v. Daniels, No. 15-127, 2020 WL 4674125, at *3 (E.D. Pa. Aug. 12, 2020) (noting defendant's use of Albuterol inhaler does not preclude possible normal lung function); United States v. Whiteman, No. 15-298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding mild obesity and hypertension fall short of extraordinary and compelling reasons for release); United States v. Falci, No. 17-228, 2020 WL 3410914, at *4 (D.N.J. June 22, 2020) (denying defendant's motion for compassionate release although defendant suffered from hypertension because "[t]here is no indication that Defendant suffers from pulmonary hypertension or any other 'serious heart condition' that the CDC has identified as a high-risk factor."); United States v. Towel, No. 17-519-6, 2020 WL 2992528, at *4-5 (E.D. Pa. June 4, 2020) (determining mild, exercise-induced asthma not a COVID-19 risk factor).[7]

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

Assuming, arguendo, that Defendant's obesity presents an extraordinary and compelling reason for his release, the relevant § 3553(a) factors do not support either Defendant's compassionate release to home confinement or a sentence reduction. As a threshold matter, other

---

[7] Defendant is fifty-eight years old. (See Doc. No. 129 at 3.) He does not suffer from a terminal illness or a serious cognitive impairment, and his wife is the caregiver to their minor daughter. See § 1B1.12 n.1(B)-(C). Thus, these factors listed in the Sentencing Guideline Manual, see § 1B1.13 n.1(B)-(C), are not relevant here.

courts in this District have denied compassionate release in similar cases where, despite extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a) sentencing factors heavily weighed against granting such relief.  See, e.g., United States v. Spivey, 471 F. Supp. 3d 621, 623 (E.D. Pa. 2020) (footnote omitted) (denying compassionate release based on § 3553(a) sentencing factors despite "assum[ing] . . . that [d]efendant's underlying health conditions . . . present extraordinary and compelling reasons for compassionate release in light of the COVID-19 pandemic."); United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4 (E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release due to his history of violence . . . ."); Daniels, 2020 WL 4674125, at *2-3 (denying compassionate release despite Government's concession that defendant's obesity was an extraordinary and compelling reason for release); United States v. Holmes, No. 08-495, 2020 WL 4504440, at *3 (E.D. Pa. Aug. 5, 2020) ("Even if defendant has the requisite serious medical conditions, the [c]ourt's analysis does not end here.").

Turning to the § 3553(a) sentencing factors and their application to Defendant, the relevant sentencing factors counsel against Defendant's release at this time.  First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics.  See § 3553(a)(1).  In pleading guilty to the offenses for which he is presently incarcerated, Defendant "took responsibility for his involvement with a group of individuals who engaged in both armed and 'smash-and-grab' robberies."  (Doc. No. 129 at 4.)  He also has an extensive criminal history, which includes five juvenile adjudications, seventeen adult convictions, and a prior incarceration for robbing seven jewelry stores of merchandise worth $477,000.  (See Doc. No. 132 at 4-5.)  Furthermore, Defendant has shown a propensity to

commit robberies while on supervised release, as he committed the first two robberies for which he is presently incarcerated while on supervised release for his prior federal robbery convictions. (See id. at 5.)  Moreover, while incarcerated, Defendant has fourteen disciplinary infractions for abusing the telephone, destroying property less than $100, using another inmate's PIN, giving/receiving money without authorization, stealing food, making a false statement, and possessing an unauthorized item, a homemade heating element, unauthorized DVDs, and narcotics.  (See id. at 6.)  Given all this background, there is no assurance that Defendant would be deterred from committing additional crimes if released.  In sum, he is still a danger to the community.

Second, the Court has also considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him.  See § 3553(a)(2)(A)-(C). Defendant has served approximately three-fourths of his total sentence of incarceration, (see Doc. No. 132 at 5); however, the magnitude of his crimes warrant the sentence he received.[8]  At this time, a reduction in his sentence would not serve any of the above considerations.

---

[8]  In United States v. Pawlowski, the Third Circuit held the following regarding 18 U.S.C. § 3553(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates— inform whether immediate release would be consistent with those factors.

967 F.3d 327, 331 (3d Cir. 2020).

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct as Defendant.  <u>See</u> § 3553(a)(6).  Defendant's extensive criminal history resulted in 37 criminal history points, which is nearly three times the number of points needed to place a defendant in the highest criminal history category.  (<u>See</u> Doc. No. 132 at 5.)  The combination of this criminal history and the seriousness of Defendant's offenses resulted in his lengthy sentence; however, this is a sentence within the range set by the Sentencing Guidelines, which Congress created to specifically address sentencing disparities.  A reduction in Defendant's sentence would frustrate the Sentencing Commission's goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.

For all of these reasons, none of the applicable § 3553(a) factors favor either Defendant's release to home confinement or a sentence reduction.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Emergency Motion to Reduce Sentence (Doc. No. 129) will be denied.  An appropriate Order follows.